UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA
Miami Division

**Case Number:  09-22453-CIV-MARTINEZ-BROWN**

JOSE MARTINEZ-PINILLOS,

     Plaintiff,

vs.

AIR FLOW FILTERS, INC., CECILIA SINGH,

     Defendants.

_____/

## ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR FINAL SUMMARY JUDGMENT

THIS CAUSE came before the Court upon Defendants' Motion for Final Summary Judgment (D.E. No. 17).  Plaintiff Jose Martinez-Pinillos ("Plaintiff" or "Martinez-Pinillos") has filed suit against his former employer, Air Flow Filters, Inc. ("Air Flow"), and the owner of Air Flow, Cecilia Singh ("Singh"), alleging violations of the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq*. ("FLSA") and breach of contract.  Defendants Air Flow and Singh ("Defendants") have now moved for summary judgment arguing that no genuine issues of material fact remain in this case.  After careful consideration and for the reasons set forth below, this Court grants in part and denies in part Defendants' motion.

### I.  Background[1]

Plaintiff alleges that he was employed by Defendant Air Flow, a local air filter fabrication company, from August 2008 until August 2009. (D.E. No. 18, Defendants' Statement at ¶ 1); (D.E. No. 23, Plaintiff's Response to Statement at ¶ 1); (D.E. No. 18-2, Depo. of Martinez-

_____

[1]Other facts are discussed in more detail in the relevant section of the analysis.

Pinillos at 10, 27).[2]  Plaintiff worked in the manufacturing area of the company, primarily cutting

materials for the filters.  *See* (D.E. No. 22, Response at 10); (D.E. No. 23-4, Depo. of Cecilia

Singh at 7).  Plaintiff also occasionally assembled the air filters  (D.E. No. 23, Plaintiff's

Response to Statement at 1); (D.E. No. 23-4, Depo. of Cecilia Singh at 8, 10).[3]

    With regard to the air filters the company produced, two employees assembled these

filters. (D.E. No. 23-4, Depo. of Cecilia Singh at 11).  In assembling these filters the two

assemblers used metal sheet bottle caps purchased from a company in Indiana on a regular basis.

*Id*. at 12-15; (D.E. No. 23-5, Depo. of Seudath Singh at 7).  In addition, in manufacturing the air

filters, the assemblers used cardboard purchased from an out-of-state vendor on a daily basis.

(D.E. No. 23-4, Depo. of Cecilia Singh at 15-16).  Defendant Singh testified that her husband,

Seudath Singh,[4] was in charge of purchasing the metal sheet bottle caps and the cardboard.  (D.E.

No. 23-4, Depo. of Cecilia Singh at 13-15).  It is undisputed that Defendant Air Flow only sold

---

[2]Plaintiff first testified that he ended his employment with Defendant Air Flow in July of 2009, but later clarified that he was fired in August of 2009.  (D.E. No. 18-2, Depo. of Martinez-Pinillos at 10, 27).  Defendants argue that Plaintiff did not work for them in 2008 and only worked for them from July 1, 2009 until the middle of August, 2009.  *See* (D.E. No. 18-3, Depo. of Seudath Singh at 4); (D.E. No. 18-4, Depo. of Cecilia Singh at 6-7).  In considering Defendants' motion for summary judgment, however, this Court views all facts in the light most favorable to Plaintiff, the non-moving party.  Thus, the Court has considered Defendants' motion as if Plaintiff worked for Air Flow in 2008.

[3]Plaintiff also states that in 2009 he performed some clean-up work at the company. (D.E. No. 18-2, Depo. of Martinez-Pinillos at 101-104).

[4]Cecilia Singh testified that she is the president and 100% owner of the company but that it was her husband who originally purchased the company.  (D.E. No. 23-4, Depo. of Cecilia Singh at 4-5).   Seudath Singh states that he does not have a title at the company, but his "position there is . . . [he does] a little bit of everything."  (D.E. No. 23-5, Depo. of Seudath Singh at 3). Seudath Singh, however, states in his sworn declaration that he is a manager of the company.  (D.E. No. 18-1 at ¶ 2).

its products locally.  (D.E. No. 18-1, Decl. of Seudath Singh at 2).

In 2008, Defendant Air Flow had a gross volume of sales of more than $500,000.  *See* (D.E. No. 18-3, Depo. of Seudath Singh at 9).  On April 27, 2009, there was a fire that damaged Defendant Air Flow's facility.  (D.E. No. 23-4, Depo. of Cecilia Singh at 19). This affected the company's revenue in 2009, resulting in gross volume of sales of only $384,440. *Id*; (D.E. No. 18-1 at 4).  Defendant Air Flow eventually received $800,000 from its insurance company relating to damage from the fire.  (D.E. No. 23-4, Depo. of Cecilia Singh at 26).

Plaintiff alleges that he entered into a written contract with Seudath Singh to perform clean-up work after the fire for which he was supposed to receive payment of $22,500.  (D.E. No. 18-2, Depo. of Martinez-Pinillos at 79, 80, 88).  Plaintiff also alleges that he performed the work under the contract and that said contract was breached because he was never paid the $22,500. *Id*. at 101-103.  In addition, Plaintiff testified that at the same time he was doing the clean-up work, he was also performing his regular work for the company.  (D.E. No. 18-2, Depo. of Martinez-Pinillos at 125-126).

On August 20, 2009, Plaintiff filed suit against Defendants alleging violations of the FLSA and breach of contract.  Defendants have now moved for summary judgment on all of Plaintiff's claims.

## II. Legal Standard

A motion for summary judgment should be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).  By its very terms, this standard provides

that "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there will be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986); *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986). An issue of fact is "genuine" if the record taken as a whole could lead a rational trier of fact to find for the non-moving party. *Anderson*, 477 U.S. at 248; *Matsushita Electric Indus. Co.,* 475 U.S. at 586. It is "material" if it might affect the outcome of the case under the governing law. *Anderson*, 477 U.S. at 248. In addition, in considering a motion for summary judgment, the Court is required to view the evidence in the light most favorable to the non-moving party. *Id*. at 255.

If the moving party bears the burden of proof at trial, the moving party must establish all essential elements of the claim or defense in order to obtain summary judgment. *See United States v. Four Parcels of Real Prop. in Greene and Tuscaloosa Counties*, 941 F. 2d 1428, 1438 (11th Cir. 1991). The moving party "'must support its motion with credible evidence . . . that would entitle it to a directed verdict if not controverted at trial.'" *Id*. (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 331 (1986) (Brennan, J., dissenting)). "If the moving party makes such an affirmative showing, it is entitled to summary judgment unless the nonmoving party, in response, 'come[s] forward with significant, probative evidence demonstrating the existence of a triable issue of fact.'" *Four Parcels of Real Prop. in Greene and Tuscaloosa Counties*, 941 F. 3d at 1438 (quoting *Chanel, Inc. v. Italian Activewear of Fla., Inc*., 931 F.3d 1472, 1477 (11th Cir. 1991)). *See also* Fed. R. Civ. P. 56(e).

In contrast, if the non-moving party bears the burden of proof at trial, the moving party

-4-

may obtain summary judgment simply by establishing the nonexistence of a genuine issue of material fact as to any essential element of a non-moving party's claim or affirmative defense. *Celotex*, 477 U.S. at 324. When the non-moving party bears the burden of proof, the moving party does not have to "support its motion with affidavits or other similar material *negating* the opponent's claim." *Id*. at 323 (emphasis in original). The moving party may discharge its burden in this situation by showing the Court that "there is an absence of evidence to support the nonmoving party's case." *Id*. at 324.  Once the moving party discharges its initial burden, a non-moving party who bears the burden of proof must "go beyond the pleadings and by [its] own affidavits or by the 'depositions, answers to interrogatories, and admissions on file' designate 'specific facts showing that there is a genuine issue for trial.'" *Id*. (quoting Fed. R. Civ. P. 56(e)). A non-moving party "may not rest upon the mere allegations or denials of the adverse party's pleadings, but . . . must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e).

### III.  Analysis

Defendants move for summary judgment arguing that the FLSA does not apply to them, that Plaintiff cannot prove his damages under the FLSA, that Plaintiff cannot demonstrate he is entitled to relief on his minimum wage claim, that even if there was a violation of the FLSA, Plaintiff cannot prove wilfulness and summary judgment should be entered on the issue of liquidated damages, and that Plaintiff cannot prove his breach of contract claim.  After careful consideration, the Court grants summary judgment in Defendants' favor with regard to Plaintiff's FLSA claims arising from any work performed in 2009 and his minimum wage claims.  The Court denies Defendants' motion in all other respects.

### A.      Plaintiff's FLSA claims

First, Defendants argue that Plaintiff's work as their employee was not subject to the FLSA because Plaintiff cannot demonstrate individual or enterprise coverage.  In addition, Defendants argue that Plaintiff did not provide the required statutory notice for his minimum wage claim and that he has abandoned any such claim.  Defendants also argue that Plaintiff cannot prove his damages under the FLSA.  Finally, Defendants argue that Plaintiff cannot prove that any violation of the FLSA was willful, and thus, Plaintiff is not entitled to liquidated damages.  The Court grants summary judgment on Plaintiff's 2009 FLSA claims, finding that Plaintiff has not demonstrated individual or enterprise coverage for this time period.  The Court also grants summary judgment on Plaintiff's minimum wage claims, finding that Plaintiff has conceded he is not entitled to any relief on these claims.  The Court finds Defendants' remaining arguments relating to the FLSA are without merit.

### 1.      Individual or Enterprise Coverage

First, Defendants argue that they are entitled to summary judgment because they are not subject to the FLSA.  For the FLSA to apply, Plaintiff must show either individual or enterprise coverage.  29 U.S.C. § 207(a); *Scott v. K.W. Max Invs., Inc.*, 256 Fed. Appx. 244, 247 (11th Cir. 2007).  In their motion for summary judgment, Defendants state that Plaintiff cannot demonstrate either type of coverage, and thus, Defendants argue they are entitled to summary judgment.

In order to establish individual coverage, Plaintiff must demonstrate that he was "(1) engaged in commerce or (2) engaged in the production of goods for commerce."[5]  *Thorne v. All*

---

[5]  Plaintiff does not make any arguments that he was engaged in the production of goods for commerce.

-6-

*Restoration Servs., Inc.*, 448 F.3d 1264, 1266 (11th Cir. 2006); *see also* 29 U.S.C. § 207(a)(1).  In

his response, Plaintiff does not address the issue of individual coverage other than to state in a

conclusory manner that there is individual coverage.  Plaintiff appears to argue that there is

individual coverage in this case for the same reasons that he argues there is enterprise coverage,

which is that other employees regularly used materials purchased from out-of-state when they

assembled the air filters sold by Defendant Air Flow.  *See* (D.E. No. 22, Response at 10).  This

handling of goods that traveled in interstate commerce by other employees, however, does not

demonstrate that Plaintiff was engaged in commerce or engaged in the production of goods for

commerce.

       "[F]or an employee to be 'engaged in commerce' under the FLSA, he must be directly

participating in the actual movement of persons or things in interstate commerce by (i) working

for an instrumentality of interstate commerce, e.g., transportation or communication industry

employees, or (ii) by regularly using the instrumentalities of interstate commerce in his work, e.g.,

regular and recurrent use of interstate telephone, telegraph, mails, or travel."  *Thorne*, 448 F.3d at

1266.  In this case, Plaintiff does not assert that Defendant Air Flow is "an instrumentality of

interstate commerce."  Moreover, it is undisputed that Air Flow is a local air filter fabrication

company.  *See* (D.E. No. 18, Defendants' Statement at ¶ 1); (D.E. No. 23, Plaintiff's Response to

Statement at ¶ 1). Thus, it is clear that the Defendant employer does not perform the type of work

necessary to be considered an instrumentality of interstate commerce.  Plaintiff also does not

assert that he regularly used the instrumentalities of interstate commerce.  Plaintiff worked in the

manufacturing area of the company cutting materials for the filters.  *See* (D.E. No. 22, Response at

10); (D.E. No. 23-4, Depo. of Cecilia Singh at 7).  He argues that other employees regularly used

materials that traveled in interstate commerce to assemble the air filters.  He does not assert,

however, that he regularly used the telephone or the mail to purchase such materials.   Defendant

Singh testified that her husband, Seudath Singh, was in charge of purchasing these items.  (D.E.

No. 23-4, Depo. of Cecilia Singh at 13-15).  It is undisputed that Plaintiff's duties for his

employer were only to cut materials for the air filters and to assemble said air filters occasionally

(D.E. No. 23, Plaintiff's Response to Statement at 1); (D.E. No. 23-4, Depo. of Cecilia Singh at 8,

10).[6]  Thus, Plaintiff also did not regularly use the instrumentalities of interstate commerce in his

work, and Plaintiff was not "engaged in commerce" under the FLSA.

      Plaintiff was also not engaged in the production of goods for commerce. For an employee

to be engaged in the production of goods for commerce an employee's work must be "closely

related and directly essential to the production of goods for commerce." *Thorne,* 448 F. 3d 1264 at

1268.  "Typical of the employees in this covered group are those who repair or maintain the

machinery or buildings used by the producer in his production of goods for commerce and

employees of a security force that protects the producer's premises." *Id*.  Here, Plaintiff does not

assert, and there is no evidence that Defendant Air Flow was producing goods for interstate

commerce.  It is undisputed that Defendant Air Flow only sold its products locally.  (D.E. No. 18-

1, Decl. of Seudath Singh at 2).   Thus, Plaintiff was not engaged in the production of goods for

commerce, and the Court finds it is undisputed that Plaintiff cannot demonstrate individual

coverage under the FLSA.

      Plaintiff, however, has at least created a genuine issue of material fact as to whether there

---

[6]Plaintiff also states that in 2009 he performed some clean-up work at the company. (D.E. No. 18-2, Depo. of Martinez-Pinillos at 101-104). Such work is also not work that regularly uses the instrumentalities of interstate commerce.

is enterprise coverage with regard to any work he performed for Air Flow in 2008. In order to establish enterprise coverage, Plaintiff must demonstrate that his employer is an enterprise "engaged in commerce." 29 U.S.C. § 207(a)(1).  An "enterprise engaged in commerce or in the production of goods for commerce" is an enterprise that (1) "has employees engaged in commerce or in the production of goods for commerce, or that has employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person; and" (2) that has an "annual gross volume of sales made or business done . . . [of] not less than $500,000."  29 U.S.C. § 203(s)(1)(A).

First, the Court finds that Plaintiff has created at least a genuine issue of material fact that Defendant Air Flow is an enterprise "engaged in commerce."  The regulations further clarify that an enterprise

> will be considered to have employees engaged in commerce or in the production of goods for commerce, including the handling, selling or otherwise working on goods that have been moved in or produced for commerce by any person, if during the annual period which it uses in calculating its annual sales for purposes of the other conditions of these sections, it regularly and recurrently has at least two or more employees engaged in such activities. On the other hand, it is plain that an enterprise that has employees engaged in such activities only in isolated or sporadic occasions, will not meet this condition.

29 C.F.R. § 779.238.  In this case, there is evidence in the record that at least two employees regularly handled goods that moved in interstate commerce.  Defendant Singh testified in her deposition that two employees assembled the air filters the company produced.  (D.E. No. 23-4, Depo. of Cecilia Singh at 11).  She also testified that in assembling these filters, the company used metal sheet bottle caps purchased from an out-of-state vendor[7] and that the two assemblers

---

[7]Seudath Singh testified that the metal sheet bottle caps were purchased from a company in Indiana. (D.E. No. 23-5, Depo. of Seudath Singh at 7).

handled these metal sheet bottle caps on a regular basis. *Id*. at 12-15.  In addition, Singh testified

that the company used cardboard purchased from an out-of-state vendor in assembling the air

filters and that the assemblers handled this cardboard on a daily basis. *Id*. at 15-16.  Thus, there is

sufficient evidence that during the relevant time period, Defendant Air Flow was an enterprise that

regularly had at least two employees handling goods that moved in interstate commerce.

To demonstrate enterprise coverage, however, Plaintiff must also show that Defendant Air

Flow has "an annual gross volume of sales made or business done" of not less than $500,000 for

the years in which he is seeking to recover under the FLSA.  In this case, it is undisputed that

Defendant Air Flow had the requisite amount of sales in 2008,[8] *see* (D.E. No. 18-3, Depo. of

Seudath Singh at 9), but the Court finds Plaintiff has not met his burden on summary judgment

---

[8]Defendants argue instead that Plaintiff is not entitled to recover under the FLSA for any overtime compensation in 2008 because he did not report any such work on his federal income tax return.  Defendants cite no case law, and the Court has not found any to support this argument. Defendants' analogies to other cases involving different facts and different statutes are unpersuasive.  In addition, a citation to an unpublished case generally recognizing that unclean hands can be a defense to an FLSA action does not convince this Court that Defendants' argument has merit. (D.E. No. 26, Reply at 5, 8) (citing *Neuman v. CTRL Sys., Inc*., No. 09-22598-CIV, 2009 WL 4730722, *3 (S.D. Fla. Dec. 10, 2009)).  Finally, the Eleventh Circuit when considering the equitable defense of *in pari delicto*, which is what Defendants have titled this argument, has stated that "under this defense, 'a plaintiff who has participated in wrongdoing may not recover damages resulting from the wrongdoing.'" *Liquidation Com'n of Banco Intercontinental, S.A. v. Renta*, 530 F.3d 1339, 1354 (11th Cir. 2008) (quoting *Official Committee of Unsecured Creditors of PSA, Inc. v. Edwards*, 437 F.3d 1145, 1152 (11th Cir. 2006)).  Here, Defendants have failed to explain how any damages Plaintiff may recover in this action resulted from Plaintiff's alleged failure to report his income.

Defendants' actual argument, which they clarify in their reply, is that Plaintiff should not be permitted to recover in this action because he is an illegal immigrant, and if he had not entered the country illegally and worked for them, he would not now be able to seek recovery under the FLSA.  *See* (D.E. No. 26 at 7).  This argument is equally without merit, *see Patel v. Quality Inn South,* 846 F.2d 700, 705 (11th Cir. 1988) (finding that illegal aliens "are 'employees' within the meaning of the FLSA."), and the Court notes that Defendants have not mentioned the fact that they apparently hired an illegal alien in violation of the law.

with regard to the recovery he seeks for the work he performed in 2009.

With regard to 2009, Defendants have sought summary judgment arguing that Defendant Air Flow did not make the requisite amount in sales for enterprise coverage.  Plaintiff argues that Defendant Air Flow's gross receipts of sales in the amount of $384,440 taken from Air Flow's 2009 tax return should be combined with an $800,000 payment they received in 2009 for material and equipment destroyed after a fire at Defendant's business.  Plaintiff also argues that the Court should apply the "rolling quarter method" and find that because the annual gross volume of sales made or business done met the $500,000 threshold in 2008, the threshold is also met for 2009. This Court disagrees with Plaintiff's arguments and finds summary judgment is appropriate with regard to Plaintiff's claims arising from work performed in 2009.

Plaintiff's argument that the $800,000 payment from the insurance company for material and equipment destroyed in a fire can count as part of Defendant Air Flow's "gross volume of sales" or "business done" is without merit.  A reimbursement from an insurance company for equipment and inventory damaged or destroyed is not a sale even under the broad definition of sale in 29 U.S.C. § 203(k).  Section 203(k) defines a sale as "any . . . exchange, contract to sell, consignment for sale, shipment for sale, or other disposition."  A reimbursement from an insurance company for destroyed materials and equipment is not an exchange, a contract to sell a consignment for sale, a shipment for sale or in any way a disposition of Plaintiff's goods or assets.

Nor is such a reimbursement "business done" under the plain meaning of the terms. The United States Supreme Court has found that the relevant Senate Report makes clear the term "business done" was added to section 203 "to dispel any uncertainty that revenue derived from services, rentals or loans, even though perhaps not literally 'sales,' was nevertheless to be

considered in measuring the dollar-volume limitation of § 3(a)."  *Falk v. Brennan*, 414 U.S. 190, 197-98 (1973).  A reimbursement from an insurance company is not income derived from services performed by Air Flow, nor is it rental income or income received on a loan.

      Finally, the Code of Federal Regulations provides that

> The annual gross volume of sales made or business done of an enterprise consists of its gross receipts from all types of sales made and business done during a 12-month period. The gross volume of sales made or business done means the gross dollar volume (not limited to income) derived from all sales and business transactions including, for example, gross receipts from service, credit, or other similar charges. Credits for goods returned or exchanged and rebates and discounts, and the like, are not ordinarily included in the annual gross volume of sales or business. The gross volume of sales or business includes the receipts from sales made or business done by the retail or service establishments of the enterprise as well as the sales made or business done by any other establishments of the enterprise, exclusive of the internal transactions between them. Gross volume is measured by the price paid by the purchaser for the property or service sold to him, as stated in the Senate Committee Report (§ 779.258). It is not measured by profit on goods sold or commissions on sales made for others . . . .

29 C.F.R. 779.259(a).  Under the plain language of this definition of  "annual gross volume of sales or business done," a reimbursement from an insurance company for damaged or destroyed inventory equipment should not be included.  The insurance company's reimbursement is not a "price paid by the purchaser for . . . [a] property or service" sold to the insurance company.  If such a reimbursement were considered a sale, then the sale of the goods would in effect be counted twice.  It would be counted once when the insurance company provided the reimbursement and then again later when said inventory was actually sold to a purchaser.

      Plaintiff also argues that this Court should use the "rolling quarter method" and find that as Defendant Air Flow grossed over $500,000 in 2008, that it also grossed at least $500,000 in 2009.  The rolling quarter method "originated in the Interpretative Bulletin in the Code of Federal

Regulations." *Flores v. Nuvoc, Inc.*, 610 F. Supp. 2d 1349, 1356 (S.D. Fla. 2008).  It provides:

> In order to determine, when there may be doubt, whether an enterprise or
> establishment has an annual gross volume of sales made or business done in excess
> of the amount specified in the statute, and [sic] analysis will be made at the
> beginning of each quarter-year so that the employer will know whether or not the
> dollar volume tests have been met for the purpose of complying with the law in the
> workweeks ending in the current quarter-year. The total of the gross receipts from
> all its sales or business during a 12-month period which immediately precedes the
> quarter-year being tested will be the basis for analysis. . . .

29 C.F.R. § 779.266(b).  Here, Plaintiff has the burden of demonstrating that Air Flow had an

annual gross volume of sales made or business done of at least $500,000, *Scott v. K.W. Max*

*Investments, Inc.*, 256 Fed. Appx. 244, 247 (11th Cir. 2007), and Plaintiff has not provided the

Court with enough information to even create a genuine issue of material fact as to this issue.

It is unknown exactly what the gross receipts from all of Air Flow's sales made or

business done was during the 12 months immediately preceding each quarter year in 2009.  From

the record, it is only clear that in 2008 Air Flow made more than $500,000 gross.  (D.E. No. 18-3,

Depo. of Seudath Singh at 9).  It is unknown the exact figure that Air Flow earned in 2008, and it

is also unknown what was earned when.  With regard to 2009, it is clear that Air Flow earned

$384,440 in gross receipts.  (D.E. No. 18-1 at 4).  However, it is unclear when in 2009 these gross

receipts were earned or what the total was for each quarter.  Thus, the Court cannot even begin to

apply the "rolling quarter method."  Here, the undisputed evidence is that in 2009 Air Flow had

gross receipts of less than $500,000.  Thus, Plaintiff has failed to meet their burden of

demonstrating that the annual gross volume of sales made or business done was at least $500,000

and failed to demonstrate that even a genuine issue of material fact remains as to this issue. *See*

*Flores*, 610 F. Supp. 2d at 1357 (finding that even if the Court applied the "rolling quarter

method" Plaintiffs failed to demonstrate that Defendant had an annual gross volume of sales made

or business done of at least $500,000 in the applicable years because the evidence they provided was insufficient); *see also Thompson v. Robinson, Inc.*, No. 06-cv-771-Orl-19JGG, 2007 WL 2714091, at *3-4 (S.D. Fla. Sept. 17, 2007) (finding that it was Plaintiff's burden to demonstrate that a company had an annual gross volume of sales made or business done in excess of $500,000 and granting summary judgment where Plaintiff failed to meet this burden and it was undisputed that Defendant's tax return "clearly . . . [indicated] that its revenue . . . [was] below the $500,000 threshold").[9]  Therefore, the Court finds Plaintiff cannot establish enterprise coverage for 2009 and grants summary judgment in Defendants' favor for this time period. The Court, however, does find that Plaintiff has demonstrated enterprise coverage with respect to 2008 and the FLSA claims[10] relating to that time period shall proceed.[11]

---

[9]Moreover, it is not even clear that applying the "rolling quarter method" would be appropriate in this case as it is unknown exactly what Air Flow's gross volume of sales made or business done was in 2008.  Air Flow could be a "marginal business" barely meeting the $500,000 threshold in 2008, and thus, it could be more logical to approach the matter on Air Flow's fiscal year and "the last month of the fiscal year could make the difference as to whether the business would continue to be exempt or not."  *Usery v. Associated Drugs, Inc.* 538 F. 2d 1191, 1193 (5th Cir. 1976) (quotations omitted).  Thus, it would not be fair to apply the "rolling quarter method" in this situation.  *See Usery*, 528 F. 2d at 1193; *Flores v. Nuvoc*, 610 F. Supp. 2d 1349, 1357 (S.D. Fla. 2008).

[10]As discussed in the minimum wage claim section, however, summary judgment is granted as to all minimum wage claims and no such claims shall proceed.

[11]As the Court has found that there is no individual or enterprise coverage for 2009, both Defendants are granted summary judgment with regard to the FLSA claims for this time period. To the extent Defendants were attempting to argue that Defendant Singh is an inappropriate defendant because she does not participate in the day to day affairs of Air Flow, the Court finds that genuine issue of fact remains as to this issue.  *See* (D.E. No. 23-4, Cecila Singh Depo. at 4-6).  Thus, Defendant Singh may be liable for any compensation due to Plaintiff under the FLSA for his work in 2008.

### 2.      Plaintiff's Minimum Wage Claim

Defendants also argue that Florida minimum wage law is inapplicable because Plaintiff did not give the written notice required under the Florida statutes, and Plaintiff has abandoned any such minimum wage claims.  The Court agrees only that Plaintiff has abandoned these claims. Plaintiff has not asserted a claim under Florida law relating to minimum wages.  To the extent Defendants are attempting to argue that Plaintiff somehow waived his federal FLSA minimum claim because he failed to comply with the written notice provision in Florida Statute § 448.110(6), the Court finds such argument to be without merit.

Plaintiff, however, has conceded that he does not have a minimum wage claim, and thus, to the extent Plaintiff seeks recovery for unpaid minimum wages in his complaint, summary judgment is granted in favor of Defendants on this claim.  *See* (D.E. No. 18-2, Depo. of Martinez-Pinillos at 49-50). Plaintiff's unsupported conclusory statement in response to Defendants' Statement of Undisputed Material Facts that "Plaintiff has not waived his minimum wage claim to the extent he was not paid for those hours" is simply not sufficient to defeat summary judgment on this issue.  *See* (D.E. No. 23, Plaintiff's Response to Statement at ¶ 20).

### 3.      Damages under the FLSA

Next, Defendants argue that they are entitled to summary judgment because Plaintiff cannot prove his damages as Plaintiff has testified inconsistently and without specificity relating to the number of hours he worked.  This Court disagrees and finds that genuine issues of material fact remain as to this issue.

An FLSA plaintiff "has the burden of proving that he performed work for which he was not properly compensated."  *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687 (1946).

The employer, however, has a duty under the FLSA to keep appropriate records of wages and hours worked.  *Id*.  Here, it is undisputed that there are no records concerning the wages and hours Plaintiff worked.[12]  In situations where the employer has failed to keep proper and accurate records, the United States Supreme Court has recognized that it would be improper "to penalize the employee by denying him any recovery on the ground that he is unable to prove the precise extent of uncompensated work."  *Id*.

Instead, the Supreme Court has erected a burden-shifting standard that applies where an employer has failed to keep proper and accurate records.  The Supreme Court has held that

> in such situation[s] . . . an employee has carried out his burden if he proves that he has in fact performed work for which he was improperly compensated and if he produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference.  The burden then shifts to the employer to come forward with evidence of the precise amount of work performed or with evidence to negative the reasonableness of the inference to be drawn from the employee's evidence.  If the employer fails to produce such evidence, the court may then award damages to the employee, even though the result be only approximate.

*Anderson*, 328 U.S. at 687-88.  Here, there is evidence in the record that Plaintiff performed work for which he was improperly compensated.  *See* (D.E. No. 18-2, Martinez-Pinillos Depo. at 41-53).  Plaintiff has also presented evidence that at least creates a genuine issue of material fact as to the amount and extent of his work.

In his deposition, Plaintiff testified that he is owed for 560 hours of overtime and that he calculated this amount by taking into account the extra hours he worked on the weekends.  *Id*. at 41-42.  He specifically testified that he worked approximately two or three weekends per month.

---

[12]Defendants state in their Response that such records were destroyed in the fire discussed above.  Defendant Singh, however, testified that the company did not keep time records because everybody came in and out at the same time.  (D.E. No. 23-4, Cecila Singh Depo. at 28).

*Id*. at 43.[13]  Plaintiff also testified that there were some occasions where he worked overtime during the week.  *Id*. at 44.  When questioned more closely at his deposition, however, Plaintiff responded that he does not remember on a week by week basis the exact amount of overtime he worked each week.  *Id*. at 52.  Plaintiff also does not remember exactly when he took days off or half days off.  *Id*. at 47-49.  He does admit that he did not work on certain holidays, that he took 15 days off to go to Cuba because his mother was ill, and that he did take some half days off.  *Id.*

Plaintiff, however, did testify that his regular weekly work schedule was 7:00 a.m. until 4:00 p.m. every week day with a 15 minute break for breakfast and a 30 minute break for lunch. *Id*. at 44-45.  Accordingly, under his regular schedule he worked a little more than forty hours every week.  Thus, when he worked on the weekends, as he testified that he did two or three times a month, he would have been working overtime unless in a particular week he took some time off. While the Court agrees that Plaintiff has not demonstrated the exact amount of hours for which Defendants failed to compensate him, "this does not defeat his claim at this stage."  *Santelices v. Cable Wiring*, 147 F. Supp. 2d 1313, 1328 (S.D. Fla. 2001) (finding that Plaintiff's failure to demonstrate the exact number of hours he worked overtime did not defeat his claim on summary judgment).  In considering Defendants' motion for summary judgment, the Court must draw all reasonable inferences in Plaintiff's favor, and the Court finds that Plaintiff has created a genuine issue of material fact as to whether he worked overtime hours for which he was not compensated. Thus, the Court denies Defendants' motion for summary judgment on this issue.

---

[13]Plaintiff specifically identifies two Saturdays in October of 2008 where he worked eight hours each day.  *Id*. at 52.

### 4.    Liquidated Damages

Defendants also argue that they are entitled to summary judgment on the issue of liquidated damages because Defendants argue that Plaintiff testified that their violation was not willful and that he testified that Defendants acted in good faith and reasonably.  The Court, however, finds that Defendants have misrepresented Plaintiff's testimony.  Thus, summary judgment is inappropriate.

"Under the FLSA a district court generally must award a plaintiff liquidated damages that are equal in amount to actual damages." *Rodriguez v. Farm Stores Grocery, Inc.*, 518 F.3d 1259, 1272 (11th Cir. 2008).  29 U.S.C. § 216(b) provides that "[a]ny employer who violates the . . . [FLSA] shall be liable to the employee or employees affected in the amount of their unpaid minimum wages . . . and in an additional equal amount as liquidated damages."  However, the Portal to Portal Act, 29 U.S.C. §§ 251-262, which amended the FLSA, provides that an employer who acted in good faith and under the reasonable belief that it was in compliance with the FLSA is not liable for liquidated damages.  This safe harbor provision specifically provides:

> if the employer shows to the satisfaction of the court that the act or omission giving rise to [the FLSA] action [for unpaid wages] was in good faith and that he had reasonable grounds for believing that his act or omission was not a violation of the Fair Labor Standards Act of 1938, as amended, the court may, in its sound discretion, award no liquidated damages or award any amount thereof not to exceed the amount specified in section 216 of this title.

29 U.S.C. § 260.  The employer has the burden of demonstrating that he is entitled to the safe harbor provision, and the employer must demonstrate both subjective and objective good faith. *Rodriguez*, 518 F. 3d at 1272.

After reviewing Plaintiff's deposition, it is clear that Defendants' argument that Plaintiff testified on page 51 of his deposition that they did not act willfully and that they always acted in

good faith is a misrepresentation.  The following exchange took place at Plaintiff's deposition between Plaintiff who is answering the questions and Defense counsel who is asking the questions.

> Q.    Do you know if the company by not paying you the halftime was willfully doing that or they didn't know better?
>
> A.    I have no information about that.
>
> Q.    So you don't know if it was wilful or intentional?
>
> A.    No.

(D.E. No. 18-2, Depo. of Martinez-Pinillos at 51).  Stating "I don't know" if the violation was willful is not the same thing as stating that the violation is not willful.  Thus, Defendants' argument relating to Plaintiff's testimony is completely devoid of all merit.  Moreover, as discussed above, it is Defendants' burden to demonstrate that they are entitled to the safe harbor provision which exempts them from having to pay liquidated damages.  Defendants have not even attempted to do this on summary judgment.  Thus, Defendants' motion as to this issue is denied.[14]

### B.    Plaintiff's Breach of Contract Claims

Defendants also seek summary judgment on Plaintiff's breach of contract claim, arguing that Plaintiff cannot prove the basic elements of his contract claim, that the statute of frauds bars

---

[14]Willfulness also affects the length of the statute of limitations.  If the violation is willful, a three-year statute of limitations applies.  29 U.S.C. § 255(a).  If the violation is not willful, a two-year statute of limitations applies.  *Id*.  It is not clear if Defendants are arguing that Plaintiff's cause of action is barred by the statute of limitations because Defendants' actions are not willful.  However, the statute of limitations under section 255 is an affirmative defense.  *See Day v. Liberty Nat. Life Ins. Co.*, 122 F.3d 1012, 1014 (11th Cir. 1997) (stating that the statute of limitations under section 255(a) is an affirmative defense).  Thus, Defendants also carry the burden to demonstrate that Plaintiff's action is barred by the statute of limitations because their actions were not willful.

the alleged oral contract, that even if there was a contract it was not between Plaintiff and Defendants, and that even if there was a contract it must be concluded that the parties modified the contract to pay Plaintiff at the rate of $9.00 per hour rather than the contract price.

First, Defendants argue that Plaintiff cannot prove the basic elements of his contract claim such as that there was a contract, that it was breached, and that he was damaged. It is well-settled that to prevail on a breach of contract claim, a plaintiff must demonstrate "the existence of a valid contract, breach of the contract, and damages." *Murray v. Playmaker Servs*., LLC, 512 F. Supp. 2d 1273, 1279 (S.D. Fla. 2007). The Court finds Plaintiff has created a genuine issue of fact as to all of these elements. Plaintiff testified that the parties had a signed agreement which provided that Plaintiff would clean up the company's premises after a fire for $22,500. (D.E. No. 18-2, Depo. of Martinez-Pinillos at 79, 80, 88). Plaintiff also alleges that he performed the work under the contract and that said contract was breached because he was never paid the $22,500. *Id*. at 101-103. Thus, Plaintiff has offered evidence to support all of the basic elements of a breach of contract claim.

Next, Defendants argue that Plaintiff's breach of contract claim, which they contend must be for the breach of an oral contract, is barred by the statute of frauds. The Court, however, finds that Defendants' argument is based on their version of the facts, which is inappropriate in seeking summary judgment. As stated above, Plaintiff contends that there was a signed written contract. *Id*. at 79, 80, and 88. Thus, the Court denies Defendants' motion on this argument.[15]

Defendants also argue that even if there was a contract, it was between Seudath Singh as

_____

[15]If Plaintiff argues at trial that there was an oral contract, Defendants may reassert their argument relating to the statute of frauds to the Court.

an individual and the Plaintiff and not the Plaintiff and either named defendant.  Plaintiff argues

that Defendant Air Flow is liable for the contract signed by Seudath Singh because he was acting

as the company's agent.  "Under Florida law, an agent may have actual or apparent authority to act

on behalf of the principal." *Moran v. Cameron*, 362 Fed. Appx. 88, 95 (11th Cir. 2010). "A

finding of actual authority requires evidence that the principal acknowledged that the agent would

act for him, that the agent accepted the responsibility of acting on behalf of the principal, and that

the principal maintained control over the agent's actions." *Id*. "In contrast, an agency relationship

based on apparent authority exists if there is a representation by the principal, reliance on the

representation by a third person, and a change in position by the third party in reliance on the

representation." *Id*. In this case, there is at least a genuine issue of material fact as to whether

Seudath Singh had authority to bind the company to a contract with Plaintiff.

Seudath Singh testified that he is the husband of Cecilia Singh, the owner of the company.

(D.E. No. 23-5, Depo. of Seudath Singh at 3).  Cecilia Singh testified that she is the president and

100% owner of the company but that it was her husband who originally purchased the company.

(D.E. No. 23-4, Depo. of Cecilia Singh at 4-5).   Seudath Singh states that he doesn't have a title

at the company but his "position there is . . . [he does] a little bit of everything." (D.E. No. 23-5,

Depo. of Seudath Singh at 3).  Seudath Singh, however, also stated in his sworn declaration that

he is a manager of Air Flow.  (D.E. No. 18-1 at ¶ 2).  He testified that the company is "a small

mom-and-pop business" and both he and his wife would help assemble filters if necessary. *Id*. at

9.  Their work was not "specific" as "[i]t's a small company.  Everybody shares." *Id*. at 9.

Plaintiff testified that Seudath Singh was a representative of the company because he gave orders

at the company.  (D.E. No. 18-2, Depo. of Martinez-Pinillos at 86).   Plaintiff also insisted that the

contract was entered into by Seudath Singh "under the name of the company." (D.E. No. 18-2 at 85, 102-103).

Moreover, although Seudath Singh testified that he could only get quotations for the clean-up job and it was up to his wife to accept an offer, he also testified that he is the one who accepted the quotation from Mr. Baluja for this job rather than the one provided from Plaintiff because Mr. Baluja's quotation was lower, and it made sense to him as a "businessman" to accept the lower quotation. *Id*. at 14. This decision made by Seudath Singh indicates that he did have actual authority to bind the company. Based on these facts, there is at least a genuine issue of fact as to whether Cecilia Singh actually gave her husband the authority to enter into contracts or whether she at least represented or allowed her husband to represent that he had such authority. Thus, the Court also denies Defendants' arguments as to this issue.

Finally, Defendants argue that even if there was a contract, the contract was modified by Plaintiff when he continuously accepted his regular paycheck for the clean-up work. It is clear that "subsequent conduct can modify the terms of a contract." *Lake Sue Dev. Co., Inc. v. Keewin Real Property Co.*, 950 So. 2d 1280, 1284 (Fla. 5th DCA 2007). Here, however, genuine issues of material fact remain as to whether Plaintiff's acceptance of his regular paycheck modified the amount he was to receive under the contract. Plaintiff testified that at the same time he was doing the clean-up work, he was also performing his regular work for the company. (D.E. No. 18-2, Depo. of Martinez-Pinillos at 125-126). Thus, it would make sense that he was also receiving his regular pay check. The Court cannot find on a motion for summary judgment that such conduct was a clear modification of the contract at issue in this case. *See Lake Sue Dev. Co.*, 950 So. 2d at 1284 (stating that "whether . . . conduct does in fact result in a modification is . . a question of

fact"). Therefore, Defendants' motion is also denied as to this issue.  Accordingly, it is hereby:

**ORDERED AND ADJUDGED** that

Defendants' Motion for Final Summary Judgment **(D.E. No. 17)** is **GRANTED in part and DENIED in part**.  The motion is granted in that summary judgment is granted in Defendants' favor on all FLSA claims resulting from work performed in 2009 and all FLSA minimum wage claims. The motion is denied in all other respects.

DONE AND ORDERED in Chambers at Miami, Florida, this 1st day of July, 2010.

JOSE E. MARTINEZ
UNITED STATES DISTRICT JUDGE

Copies provided to:
Magistrate Judge Brown
All Counsel of Record

-23-